# Crozer's Estate.   Commonwealth's Appeal.

*Wills—Construction—Equitable conversion—Foreign real estate
—Appraisement—Collateral inheritance tax.*

A Pennsylvania testator by will gave a large number of specific
cash legacies and then provided, "Item. For the purpose of assist-
ing in the payment of the foregoing legacies and settling my
estate, I devise all my real estate to my executors in fee simple to
be sold by them......and the proceeds of such sale shall be de-
voted by them to the payment of the aforesaid legacies." The estate
passed to collaterals. Part of the real estate was situate in Illi-
nois and upon this the Commonwealth claimed a collateral inherit-
ance tax. It appeared that such real estate had not actually been
sold and that at the time of testator's death there was sufficient per-
sonal estate to pay all of the said legacies. *Held,* that the will did
not work such a conversion of the Illinois real estate as to render
it subject to collateral inheritance tax in this Commonwealth.

Argued February 9, 1916.   Appeal, No. 435, Jan. T.,
1915, by Commonwealth of Pennsylvania, from decree of
O. C. Del. Co., No. 10340, dismissing exceptions to re-
port of auditor, in estate of Robert H. Crozer, Deceased.
Before MESTREZAT, POTTER, FRAZER and WALLING, JJ.
Affirmed.

Exceptions to auditor's report. Before JOHNSON,
P. J.

From the record it appeared that the Commonwealth
made an appraisement of testator's estate for collateral
inheritance tax and the executor excepted because land
belonging to the testator and located in Illinois was in-
cluded. The matter was referred to Josiah Smith, Esq.,
Auditor, who reported, inter alia, as follows:

"It is agreed that the only question before the auditor
for determination is the question as to whether or not
the Chicago real estate above referred to is subject to
collateral inheritance tax in Pennsylvania.......

"The particular clauses of the will with which we are

concerned in the settlement of the only question before the auditor are three in number: Nos. 1 and 2 follow each other in the order hereinafter set forth, after all the items carrying specific bequests, and No. 3 is the residuary clause which follows almost immediately after. The codicil does not concern us, except as it relates to Clause No. 1.

"No. 1. 'Item. I direct my executors to pay the collateral inheritance tax on the foregoing legacies so that all of said legatees shall receive their respective legacies without abatement on that account.'

"No. 2. 'Item. For the purpose of assisting in the payment of the foregoing legacies and settling my estate, I devise all my real estate to my executors in fee simple, to be sold by them either at public or private sale, and either for cash or credit, whenever in their judgment it may seem proper, and with full power to them to make, execute and deliver to the purchaser or purchasers thereof good and sufficient title thereto, without any responsibility upon the purchasers to see to the proper application of the purchase-money, and the proceeds of such sale shall be devoted by them to the payment of the aforesaid legacies.'

"No. 3. 'Item. All the rest, residue and remainder of my estate I give and bequeath to my two sisters and three brothers, absolutely.'

"Robert H. Crozer was a citizen of Pennsylvania, having his domicile in the Borough of Upland, Delaware County, Pennsylvania, for many years. He died on the ninth day of October, A. D. 1914, unmarried and testate, leaving no lineal descendants. His will is dated July 19, A. D. 1888, and has one codicil attached, which bears date October 6, 1893.

"The question in this case turns upon whether or not there has been an equitable conversion of the real estate in the State of Illinois. And this, it is agreed, is the only question in the case. It is clearly settled that in order to work a conversion either one of three things

must appear within the four corners of the will.   (1) A positive direction to sell; or, (2) an absolute necessity to sell in order to execute the will; or, (3) such a blend-·' ing of real and personal estate by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money.......

If from the words of the will, to which alone we must look in order to ascertain what was the intention of the testator, it shall appear that he only intended a sale should be made of the real estate in the event that such a sale was necessary in order to raise sufficient funds for the purpose of 'assisting in the payment of the foregoing legacies,' a conversion of it into money would not in equity be considered as having taken place unless such necessity arose.   It is conceded that no such necessity has arisen or can arise in this case.   But this case seems to be controlled by the general rule as to failure of purpose of conversion.   The general rule is that the conversion is limited to the purposes. of the testator as expressed in the will, and in the event of a total failure of the purpose the property passes according to its original character.

"The direction to sell in this case was for a single purpose, to wit: the devotion of the proceeds of the sale to the payment of the 'aforesaid legacies.'   As was said in· the note to Acyroyd v. Smithson, 1 White & Tudor's Lead. Cas. in Eq., on page 1181:

" 'It has never since been doubted that where a testator directs the real estate to be sold, and the produce of the will to be applied for a purpose, which either wholly or partially fails, the undisposed of beneficial interest will result to his heir at law......although the land may have been actually converted into money.'   If this doctrine is sound, then in our case the purpose having wholly failed, the land passes to the residuary legatees as land.

"Furthermore, on page 1185, we find: 'Where a sale

is unnecessary by reason of a total failure of the purposes for which the conversion was directed, the heir will take the estate as realty.' How applicable this is to the case before us. The testator directed a sale for a single purpose, and that purpose having wholly failed, there is no necessity for a sale. 'The presumption is if he intended a conversion at all, he intended a conversion for that purpose only, and if it failed, that then the property should pass as if no conversion had been directed': Luffberry's App., 125 Pa. 513, page 516.

"The auditor thinks it correct to hold from the language employed by the testator that he intended as a mere precautionary measure a conversion of his real estate only if such were necessary to effect a single specific purpose, to wit: the application of the proceeds of sale to 'assist in the payment of the foregoing legacies.' ......

" 'A discretion in the trustees as to whether a sale shall or shall not take place will, of course, prevent a conversion': Bispham's Eq., Sec. 312 (8th Ed.).

"In the light of this principle it is difficult to see why a discretion was not lodged in the executor here. His direction to sell was for a certain purpose. The condition of the estate visits him with knowledge of the fact that it is not necessary for a sale in order to carry out this particular purpose. The time of the sale, by the language of the will, was discretionary. Why, then, should he be compelled to make a sale for a purpose no longer necessary, when that sale might be prejudicial to the general interests of the estate and is not even necessary to vest title in the residuary legatees? ......

"A direction to sell must be positive, imperative and absolute in its terms—unequivocal. The auditor does not regard the first essential, to wit: the direction in this will to sell as being sufficiently unequivocal to come within the rule, but even if it does, still a conversion is not worked, because of the failure or lack of necessity for which it was given. The second essential, a necessity to

sell in order to execute the will, necessarily does not exist, and the third essential, to wit: such a blending of real and personal estate as clearly to show an intention to create a fund out of both kinds of estate and to bequeath said fund as money, does not exist, for the reason that the clearly expressed intention of the testator was only to have a sale of the real estate if the necessity should arise to use the proceeds of such sale for the purpose mentioned, to wit: 'Assisting in the payment of the foregoing legacies.'

"A close examination of this will reveals its clean-cut, logical construction. First, a plain direction to liquidate testator's debts. Second, a series of bequests, charitable and otherwise, in logical order. Next, the first of the trio of items around which the whole contention in this case is waged, to wit: the item securing to 'all of said legatees' their legacies entire, 'without abatement' on account of collateral tax.

"Up to this point there can be no dispute as to the clearly expressed intention of testator to relieve his specific beneficiaries of the burden of collateral taxation. To the mind of the auditor, Clause No. 2 of the trio, to wit: that containing the direction to sell the real estate, emphasizes and gives added force to his desire to give his legatees their legacies free of collateral tax, because he directs the proceeds of the sale to be applied to the payment of legacies already carefully freed from any liability of deduction by the infliction of the collateral tax; in other words, the proceeds of the sale, if such a sale is necessary, is only to be used in the payment of legacies that are to be free of collateral taxation. This indicates that the subject of collateral taxation was in his mind, and if anything is to be presumed it is that he was looking for legal means of escaping additional taxation, and benefiting his beneficiaries instead of otherwise.

"If this reasoning is correct, Clause No. 3 of the residuary clause, therefore, need give us no concern. It will probably be conceded that there is nothing in this

clause, standing alone, from which the most vivid imagination could infer the slightest intention to convert, and taking the whole will together, it is difficult to find any language from which it could be even fairly inferred, much less presumed, that the testator intended the conversion contended for by Commonwealth's counsel, and especially with the legal presumption against conversion opposed to them. This presumption can only be overcome by a clearly expressed intention, or necessarily implied intention to convert, or such a condition or circumstances existent, as would leave no doubt of testator's intention so to do.

" 'Where there is a doubt as to the intention the original character of the property will be retained': Cyc., Vol. 9, pages 833-834.

"This will, to our mind, is harmonious in every section. Its scheme is plain and easily carried out, without a sale of the real estate. There is no necessity to sell the real estate for any purpose, and the residuary legatees can legally take it as land, or have it sold and take it as money, just as they and the executor choose.

"A close examination of the long line of cases since the imposition of a collateral tax in Pennsylvania impresses us with the evident desire of our appellate courts to prevent not only the doctrine of equitable conversion becoming a rule de jure, and to refrain from giving force to the doctrine, unless the will clearly discloses an intention to convert, but to establish that real test of such intention is whether or not the direction to sell is made an end or object in itself, or only a means to attain such end. The latter cases indicate this. Take Muderspaugh's Est., 231 Pa. 376. There, there was a positive direction to sell in these words: 'All of my estate shall be sold,' and the proceeds were directed to be devoted to certain purposes which partially failed. In spite of the positive direction to sell, the court decided that conversion was not necessary to carry out testator's intent.

"Is a direction to sell, positive in its terms, intended

absolutely to prevail, regardless of circumstances, in any event?   Is the sale of the real estate and its conversion into personalty made an end in itself?   If the testator intended the conversion to serve a purpose, then conver-. sion by the sale depends upon its necessity as subserving the purpose, and if for any reason the necessity fails, the conversion will not be regarded as made.......

"It would seem, therefore, that the latest and best thought upon the subject is that a conversion is worked only where the testator has given clear expression to a plain intention that the sale shall be an end in itself.

"We do not see, therefore, in this case, that any necessity exists for a sale of the real estate, in order to carry out the provisions of the will.   Each and every provision of the will can be administered without conversion. The direction to his executor to sell was for the expressed purpose of 'assisting in the payment of the foregoing legacies' and settling his estate, 'and the proceeds of such sales shall be devoted by them to the payment of the aforesaid legacies.'   It is admitted that the amount of cash in the hands of the executor is largely in excess of the amount necessary to pay all of the legacies, debts and claims against the estate, and no necessity exists for a sale for the purposes mentioned in the item of the will where the direction to sell occurs, nor for any other purpose.......

"Under this line of reasoning and the line of authorities cited in support thereof, the auditor therefore concludes that the real estate of the testator situated in Illinois was not converted into personalty by the will, and is not subject to collateral tax in Pennsylvania, and should not be included in a collateral inheritance tax appraisement......."   The Commonwealth excepted.

The court confirmed the auditor's report on the authority of Painter v. Painter, 220 Pa. 82.   The Commonwealth appealed.

*Error assigned* was in dismissing exceptions and confirming report.

*George T. Butler,* with him *J. C. Taylor,* for appellant.
—The direction to sell real estate was positive: Miller
v. Commonwealth, 111 Pa. 321; Philadelphia's App.,
Trustee, Guardian of Eisler's Est., 112 Pa. 470; Sev-
erns's Est. (No. 1), 211 Pa. 65.

The testator's intention was to convert his real estate
and that his entire estate should pass as personalty;
under these circumstances there was no such failure or
purpose as prevents a conversion: Miller v. Common-
wealth, 111 Pa. 321; Dalrymple's Est., 215 Pa. 367.

*William I. Schaffer,* with him *E. Wallace Chadwick,*
for appellee.—Where a Pennsylvania will contains even
a positive direction to sell real estate situate in another
state and passing to collaterals, a collateral inheritance
tax accrues only if the direction to sell is intended abso-
lutely to prevail, regardless of circumstances, in any
event: Painter v. Painter, 220 Pa. 82; Martin v. Provi-
dent Life & Trust Co., 235 Pa. 281; Muderspaugh's Est.,
231 Pa. 376; Dalrymple's Est., 215 Pa. 367.

There is no distinction in principle between the failure
of purpose in this case, and a failure by reason of a
lapsed or void legacy: Harrington v. Pier, 105 Wis. 485
(82 N. W. Repr. 345); Sweeney v. Warren, 127 N. Y.
426 (28 N. E. Repr. 413); Gourley v. Campbell, 66 N.
Y. 169.

The direction to sell in this will is made subject to a
substantial discretion in the executor, and the sale was
postponed and therefore no right to a tax accrued:
Handley's Est., 181 Pa. 339.

PER CURIAM, March 13, 1916:
We agree with the conclusion of the learned auditor
and court below, and the decree is, therefore, affirmed.